**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **THE ALLERE GROUP PROFESSIONAL CORPORATION,** **BARNEY P. BOLT, JR.** **Plaintiffs,** **v.** **TGVZG, LLC** **Defendant.** | **CIVIL ACTION NO. 22-3249** |

<u>**MEMORANDUM OPINION**</u>

Rufe, J.                                                                December 15, 2023

Plaintiff Allere Group Professional Corporation filed this lawsuit against Defendant TGVZG, LLC, alleging that TGVZG wrongfully recorded a UCC-1 financing statement against the Allere Group, created fraudulent loan documents, and unlawfully froze certain of the Allere Group's receivables. TGVZG has moved to dismiss the Complaint and compel arbitration, citing an arbitration agreement signed by the officers of the parties to resolve prior litigation between them. The Allere Group opposes the motion, arguing that Moshe Lehrer, TGVZG's owner and operator, is barred from invoking the agreement because he failed to comply with the arbitrator's filing procedures, caused the arbitrator to dismiss the case, and did not take any steps to advance the arbitration proceedings. For the reasons stated below, TGVZG's motion will be granted.

I.      **BACKGROUND**

A. **Factual Background**

There is a long and acrimonious history between these parties and their affiliated officers. The Court will not summarize the entirety of that history here, but significant background context is useful for understanding the nature of the present dispute.

The first relevant entity is Comer Enterprises, Inc. ("CEI"), a staffing company, which is not a party to this case. Nicole Comer served as President of CEI and operated the business. Comer contends that in October 2018, after CEI began having serious financial troubles, she was first contacted by Moshe Lehrer, a then-17-year-old entrepreneur who offered to sell merchant cash advance loans to CEI.[1] Lehrer is the owner and operator of Defendant TGVZG, a Florida limited liability company.[2]

On July 3, 2019, Plaintiff the "Allere Group" was registered in Pennsylvania, with an address in the same building as CEI.[3] Comer's father, Barney P. Bolt, Jr., has 100% ownership of the Allere Group.[4] Comer serves as the Allere Group's President.[5] On August 18, 2019, CEI filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania.[6]

On September 11, 2019, Comer executed a Partnership Agreement (the "Comer Partnership Agreement") with Lehrer.[7] Under the Comer Partnership Agreement, Lehrer agreed to make a $600,000 initial contribution in exchange for a 49% ownership interest in the Allere

---

[1] Pls.' Resp. Opp'n Mot. Dismiss at 3 [Doc. No. 10]; *see also* Def.'s Mem. Supp. Mot. Dismiss at 2 [Doc. No. 9].

[2] *Id.* at 1.

[3] *See* Corporation Registry, Penn. Dep't of State, https://file.dos.pa.gov/search/business (The Allere Group Professional Corporation, Company No. 6913446; initial filing July 3, 2019); Def.'s Mem. Supp. Mot. Dismiss at 1–2 [Doc. No. 9].

[4] Compl. at 3 [Doc. No. 1].

[5] Pls.' Resp. Opp'n Mot. Dismiss at 3 [Doc. No. 10].

[6] *In re Comer Enters.*, No. 19-15182 (Bankr. E.D. Pa.) (Coleman, J.). The bankruptcy proceedings remained active during the pendency of this case and other related litigation until, on September 20, 2023, Chief Bankruptcy Judge Magdeline D. Coleman issued an order closing the case. Order, Sept. 20, 2023 [Doc. No. 203], No. 19-15182 (Bankr. E.D. Pa.).

[7] Pls.' Sur-Reply Opp'n Mot. Dismiss, Ex. L at 23–26 [Doc. No. 17-13] (Comer Partnership Agreement).

Group.[8] On September 20, 2019, Lehrer and Bolt executed a second Partnership Agreement ("Bolt Partnership Agreement").[9] The Bolt Partnership Agreement contained terms identical to the Comer Partnership Agreement, except for the replacement of Comer's name and contact information with Bolt's name and contact information. Defendant TGVZG contends that this second agreement was executed to avoid suspicion in the bankruptcy proceedings that Comer diverted business and assets to the Allere Group from CEI, the debtor entity.[10]

For approximately one year, Lehrer served as the Chief Financial Officer of the Allere Group, during which time it purportedly executed a Future Receivables Sale and Purchase Agreement, dated February 10, 2020, through which the Allere Group sold 20% of its future receivables to TGVZG for $46,800.00, with a repayment amount of $70,200.00, plus 9% interest and liquidated damages in the event of default.[11] The Allere Group alleges that it never received the $46,800.00 purchase amount, and further alleges that Bolt's signatures and initials in the agreement (and in later financial documents arising from the purchase agreement) were forged.[12] In September 2020, Lehrer was ousted from his position.[13]

---

[8] *Id.* at 23–24. Plaintiff Allere Group vehemently disputes that Lehrer ever made the $600,000 contribution, citing "inarguable bank statements, wire transfer documentation, and other third party financial records[.]" Pls.' Sur-Reply Opp'n Mot. Dismiss at 4 [Doc. No. 17].

[9] Pls.' Sur-Reply Opp'n Mot. Dismiss, Ex. L at 28–31 [Doc. No. 17-13].

[10] Def.'s Mem. Supp. Mot. Dismiss at 2 [Doc. No. 9].

[11] *Id.* at 3; Compl. at 3–4 [Doc. No. 1]; Compl., Ex. B at 1, 16–17 [Doc. No. 1-3].

[12] Compl. at 4–5 [Doc. No. 1].

[13] Def.'s Mem. Supp. Mot. Dismiss at 3 [Doc. No. 9].

### B.  Procedural Background

#### 1.  *First Eastern District of Pennsylvania Action and Other Litigation*

On October 20, 2020, Lehrer filed a civil action against Comer and Bolt in this District.[14] Lehrer alleged that Comer had violated the Comer Partnership Agreement and Pennsylvania state law by "completely ignor[ing] and fail[ing] to respond to Lehrer's demands" to grant him access to the books and records, to reinstate his salary and healthcare benefits, and to allow him to co-manage the business.[15] No counterclaims were filed. On March 4, 2022, after a year and a half of litigation before the Honorable Gerald Pappert, the parties filed a stipulation of voluntary dismissal and the case was dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).[16]

Also on March 4, 2022, Lehrer, Comer, and Bolt executed a Binding Arbitration Agreement, which documented "the Parties['] desire to fully and finally resolve any and all actual and potential claims arising from or related to the Disputes, and all other disputes between them through binding arbitration."[17] The Agreement defined the "Disputes" as the "number of lawsuits and other claims (including claims arising under the Uniform Commercial Code) . . . filed by and among the Parties, as well as corporate entities with which they are affiliated[.]"[18]

---

[14] *Lehrer v. Comer*, No. 20-5228 (E.D. Pa.) (Pappert, J.).

[15] Compl. at 2 [Doc. No. 1], *Lehrer*, No. 20-5228.

[16] Stipulation of Voluntary Dismissal [Doc. No. 35], *Lehrer*, No. 20-5228.

[17] Pls.' Resp. Opp'n Mot. Dismiss, Ex. A at 1 [Doc. No. 10-1].

[18] *Id.* There were at least four other lawsuits:

(a) In November and December 2020, KMI Group Inc., a company owned and controlled by Rosa Lehrer (Moshe Lehrer's mother), filed two actions in Delaware state courts against Comer. *KMI Grp. Inc. v. Comer*, No. N20C-11-086 JRJ (Del. Super. Ct.) (filed Nov. 10, 2020); *KMI Grp. Inc. v. Comer*, No. 2020-1033-JRS (Del. Ch.) (filed Dec. 4, 2020). The Allere Group contends that these lawsuits were frivolous, noting that one of them ended in an award of attorneys' fees to Comer. Pls.' Sur-Reply Opp'n Mot. Dismiss at 1 [Doc. No. 17].

The Binding Arbitration Agreement stated that the parties agreed to dismiss the case before Judge Pappert, and that "[e]ach party understands that it will not be able to bring a separate lawsuit (filed in court) concerning any dispute arising from or relating to [that case] following its dismissal, or any other dispute that may arise which is covered by this Agreement," with the exception of lawsuits involving "a question of Constitutional or civil rights or otherwise as permitted by law."[19] The agreement named the American Arbitration Association ("AAA") as the arbitrator.[20] It did not specify which laws governed the agreement. The agreement contained specific deadlines in accordance with an expedited schedule, including a deadline of March 31, 2022, to file and serve a statement of claim, as well as later deadlines over the following two months to file answering statements, take depositions, and present expert testimony, but the parties agreed that "additional deadlines will be necessarily set by the Arbitrator upon a preliminary hearing" to "occur on or before April 29, 2022."[21]

2. *Arbitration*

The parties have filed copies of emails sent after they entered into the Binding Arbitration Agreement that show the course of events. On March 21, 2022, Mark Eckard (counsel for Comer) spoke by telephone with Colleen Smeryage (then-counsel for Lehrer who participated in

---

(b) On March 4, 2021, Comer filed an action against Lehrer, his parents, and KMI Group, Inc. in the U.S. District Court for the District of Delaware, alleging, *inter alia*, that Lehrer and his family were engaging in malicious prosecution and harassment of Comer. *Comer v. Lehrer*, No. 21-334 (D. Del.) (Connolly, J.). The case failed to proceed past the initial pleadings stage and was dismissed.

(c) On June 17, 2021, the Allere Group and Bolt filed an action against TGVZG, LLC, also in the District of Delaware, alleging claims essentially identical to those at issue in this case. *Allere Grp. Prof. Corp. v. TGVZG, LLC*, No. 21-863 (D. Del.) (Connolly, J.). The district court dismissed the case due to the Allere Group's failure to timely respond to the TGVZG's motion to dismiss. Order, Dec. 13, 2021 [Doc. No. 6], No. 21-863 (D. Del.).

[19] Pls.' Resp. Opp'n Mot. Dismiss, Ex. A at 1–2 [Doc. No. 10-1].

[20] *Id.* at 1.

[21] *Id.* at 2.

negotiating and drafting the Binding Arbitration Agreement[22]), and memorialized in a follow-up email that, "notwithstanding discovery deadlines stated in the arbitration agreement, Mr. Lehrer will produce documents in support of his claim on or before March 31, 2022," that "[t]he parties will thereafter remain flexible about production of documents," and that the parties would "talk after Mr. Lehrer's production to see if the matter can be resolved."[23]

On March 31, 2022, Smeryage emailed Eckard stating that certain documents had been filed that evening with the AAA.[24] Smeryage's email attached the documents and informed Eckard that she would "keep [him] updated as soon as further communications are received from the AAA case manager."[25] Later communications from the AAA confirmed that Lehrer filed the initial documents *pro se*.[26]

At some point over the following 11 days, Lehrer retained new counsel, Menachem Mayberg.[27] Meanwhile, on April 7, 2022—unbeknownst to Comer or her counsel—the AAA sent a notification to Lehrer's personal email account that because its filing requirements had not been met, it had not set deadlines for any answering statement or counterclaim, and it would not notify the parties of such deadlines until the deficiencies had been resolved.[28] The AAA notice

---

[22] Smeryage Aff. at 1 [Doc. No. 15-1].

[23] Smeryage Aff., Ex. B [Doc. No. 15-1].

[24] Pls.' Resp. Opp'n Mot. Dismiss, Ex. B [Doc. No. 10-2].

[25] *Id.*

[26] Pls.' Resp. Opp'n Mot. Dismiss, Ex. D at 1 [Doc. No. 10-4].

[27] Mayberg Aff. at 1–2 [Doc. No. 15-2] (referring to Smeryage as "prior counsel"); Pls.' Resp. Opp'n Mot. Dismiss, Ex. C at 7 [Doc. No. 10-3] (email from Eckard asking Mayberg if he "had an opportunity to obtain and review the information [Eckard] sent to Moshe Lehrer's former counsel").

[28] Pls.' Resp. Opp'n Mot. Dismiss, Ex. E [Doc. No. 10-5].

specified that Lehrer was required to file a "completed Demand for Arbitration form" by April 14, 2022, otherwise it would "be forced to administratively close this matter."[29]

On April 11, 2022, Eckard spoke by telephone with Mayberg, and in a follow-up email, wrote "that the dates/deadlines in the attached arbitration agreement are flexible and intended to be loose."[30] Mayberg confirmed the statement in a response email on the same date.[31]

On April 18, 2022, the AAA sent another reminder notification to Lehrer's personal email account, providing an extended deadline of April 22, 2022 (*i.e.*, eight days from the initial deadline in the first AAA notification email) to file the requested information before the AAA would "be forced to administratively close this matter."[32]

On April 21 and April 25, 2022, Eckard emailed Mayberg to ask whether he had received information that had been sent to Lehrer's former counsel.[33] Mayberg did not immediately respond. On April 26, 2022, a paralegal at Eckard's law firm asked the AAA about the status of the case, and the AAA responded the following morning that the case had been closed because Lehrer had not submitted a demand form, paid his filing fee, or responded to either of the AAA's two reminder notifications.[34]

On June 1, 2022, Mayberg emailed Eckard, stating that he had "tried to reach" Eckard at his office number "to discuss dates and moving forward."[35] On the same date, counsel

---

[29] *Id.*

[30] Pls.' Resp. Opp'n Mot. Dismiss, Ex. C at 8 [Doc. No. 10-3].

[31] *Id.* at 7.

[32] Pls.' Resp. Opp'n Mot. Dismiss, Ex. F at 1 [Doc. No. 10-6].

[33] Pls.' Resp. Opp'n Mot. Dismiss, Ex. C at 7 [Doc. No. 10-3].

[34] Pls.' Resp. Opp'n Mot. Dismiss, Ex. D at 1–2 [Doc. No. 10-4].

[35] Pls.' Resp. Opp'n Mot. Dismiss, Ex. C at 6 [Doc. No. 10-3].

exchanged a series of emails: Eckard informed Mayberg that the case had been closed, and he interpreted the dismissal as indicating that Lehrer "had abandoned his claim and the arbitration agreement generally, since [Comer was] therefore denied [her] right to file a counterstatement."[36] Mayberg responded that he had not received notice that the case had been closed, but that "if it was dismissed for some reason, it was not . . . [Lehrer's] desire to end the proceeding" and that "he does desire to move forward with arbitration."[37] Mayberg suggested that, "based on the 'loose dates' agreement, we can move forward on a timetable that makes sense."[38]

In response, Eckard wrote, "I know dates were loose and agree with you on that point but there's got to be some measure if [*sic*] reasonableness with [Lehrer's] failure to even open his claim properly and communicate with AAA."[39] Mayberg stated that he had been "holding off as you needed more time," accused Eckard of failing to submit *his* initial documents, and suggested that he would have moved for a default judgment but declined to do so because of the "loose dates" agreement Eckard had reached with Smeryage.[40] Eckard noted that he had not received any notice from the AAA about a response deadline, that he did not learn that the case had been dismissed until reaching out to the AAA directly, and that he was precluded from filing a counterstatement because "[y]ou can't file a counterclaim in a nonexistent case."[41]

---

[36] *Id.*

[37] *Id.* at 5.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 4.

[41] *Id.*

In concluding the email discussion, Mayberg stated that he was "looking to set up the filings to be submitted in the first part of this month and move from there," and on June 3, 2022, he followed up that he "would like for us to submit document [*sic*] to the arbitrator within the next two weeks[.]"[42] Eckard requested confirmation: "Do you mean you're going to refile your complaint and commence the arbitration then we'll file a counterstatement?"[43] Mayberg responded, "Yes, this is correct," but continued to assert that it was Comer who "did not follow the agreement."[44]

Eckard then wrote in an email on June 9, 2022: "The concept of the agreement was that your client would file if he wanted and then we would file a counterstatement in arbitration . . . . [Y]ou can't file an answer and counterclaim to a complaint in a case that's been dismissed and closed . . . . Again, if your client wants to pursue his frivolous claim, have him re-file his demand for arbitration with the AAA and my client will respond in accordance with the AAA commercial rules."[45]

During the following two months, neither Lehrer nor his counsel refiled a new demand for arbitration with the AAA. On August 15, 2022, over five months after the parties executed the Binding Arbitration Agreement and voluntarily dismissed the case before Judge Pappert, the Allere Group and Bolt filed this case against TGVZG.[46]

---

[42] *Id.* at 2.

[43] *Id.*

[44] *Id.* at 1.

[45] *Id.*

[46] *Allere Grp. Prof. Corp. v. TGVZG, LLC*, No. 22-3249 (E.D. Pa.) (Rufe, J.).

## II.      LEGAL STANDARD

This is a diversity case requiring the Court to evaluate the enforceability of an arbitration agreement. The Third Circuit has provided two possible standards of review for deciding a motion to compel arbitration pursuant to an agreement. Under the first avenue, "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard,'" as applied by courts reviewing a motion to dismiss.[47]

However, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then courts allow limited discovery on the question of whether there is an agreement to arbitrate and apply a summary judgment standard.[48] "In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause," the factual question of whether there is an agreement—or whether there was a "failure, neglect, or refusal to perform" the agreement—is determined by the court after a hearing or by a jury if a party requests one.[49]

---

[47] *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)); *see also Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017) ("[I]f a party moves to compel arbitration based on an authentic arbitration agreement that is attached to the complaint, the Rule 12(b)(6) standard is appropriate unless 'the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue.'" (quoting *Guidotti*, 716 F.3d at 776)).

[48] *Guidotti*, 716 F.3d at 776.

[49] *Id.* at 776, 780 (quoting *Somerset*, 832 F. Supp. 2d at 482; 9 U.S.C. § 4) (quotation marks omitted).

These two standards "differ significantly," given that a motion to dismiss standard requires the court to "accept as true the facts established by the pleadings—the complaint and incorporated documents," whereas a summary judgment standard requires "the party opposing the motion to submit evidence, which is typically obtained through discovery."[50] The "centerpiece" of the Third Circuit's two-part framework "is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents," because the two alternative avenues "represent[] a balancing of the competing purposes of the [Federal Arbitration Act] by fostering 'efficiency and speedy dispute resolution' tempered by the 'important aim' of 'enforc[ing] . . . private agreements' and the 'significant role courts play in interpreting the validity and scope of contract provisions . . . .'"[51]

## III.    DISCUSSION

### A.  Standard of Review

Neither the Complaint nor its exhibits include or reference the Binding Arbitration Agreement. The text of the agreement and the parties' relevant email communications were made available to the Court only in relation to TGVZG's motion to compel arbitration. But for TGVZG's motion to compel arbitration, the Court would not have been furnished with a copy of the Binding Arbitration Agreement or have otherwise been put on notice of its existence.[52]

Accordingly, the Court must hold that it is not apparent from the face of the Complaint and its incorporated documents whether the Allere Group's claims are subject to an enforceable

---

[50] *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019) (citing *Guidotti*, 716 F.3d at 772; Fed. R. Civ. P. 56(c)(1)(A)).

[51] *Singh*, 939 F.3d at 218 (quoting *Guidotti*, 716 F.3d at 773, 774–76) (quotation marks omitted).

[52] *Cf. Silfee*, 696 F. App'x at 578 (holding that district court erred in applying the summary judgment standard where "a party move[d] to compel arbitration based on an authentic arbitration agreement *that* [*was*] *attached to the complaint*[.]" (emphasis added)).

arbitration agreement. For that reason alone,[53] the Court must resolve TGVZG's motion to compel arbitration according to the summary judgment standard and grant TGVZG's motion only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[54]

A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law," here the law of contracts.[55] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[56]

### B.  An Arbitration Agreement Was Reached

There is no dispute that the parties entered into the "Binding Arbitration Agreement," which expressly applies to "any and all actual and potential claims arising from or related to the Disputes, *and all other disputes between them*," including the "number of lawsuits" filed by individuals on both sides of the agreement and the "corporate entities with which they are affiliated," with specific reference to "claims arising under the Uniform Commercial Code."[57] Of particular importance here, Comer, Bolt, and Lehrer agreed that by "signing this document, *each*

---

[53] *Guidotti*, 716 F.3d at 776 (requiring courts to apply the summary judgment standard "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, *or* if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue" (emphasis added)).

[54] Fed. R. Civ. P. 56(a). The fact that the arbitration agreement was not attached to or referenced in the Complaint is an independently sufficient reason to apply the summary judgment standard. *See Roman v. Prince Telecom LLC*, Nos. 22-1348 and 22-1349, 2023 WL 3194464, at *3 (3d Cir. May 2, 2023) ("The District Court correctly concluded that the present motion to compel arbitration should be decided under the summary judgment standard because none of the complaint's factual allegations allude to an arbitration agreement, nor does the complaint rely on an arbitration agreement to state a claim.'" (quotation marks and citation omitted)).

[55] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[56] *Id.*

[57] Pls.' Resp. Opp'n Mot. Dismiss, Ex. A at 1 [Doc. No. 10-1] (emphasis added).

*party* understands that it will not be able to bring a lawsuit concerning any dispute that may arise which is covered by the arbitration agreement," subject to exceptions not applicable here.[58]

### C.  The Arbitration Agreement Was Not Waived or Revoked

The crux of the Allere Group's argument is that it would be inequitable for Lehrer to invoke the Binding Arbitration Agreement when he did not make good-faith efforts to advance the arbitration proceedings before he was sued. The Allere Group contends that Lehrer's failure to pay the AAA's required fees and fill out its initial forms renders the entire agreement invalid and unenforceable.[59] Counsel for the Allere Group stated repeatedly to opposing counsel, and raises essentially the same argument now, that it could not file its counterclaim because the AAA had administratively dismissed the case.[60]

It is true that courts have found waiver of an arbitration agreement where a defendant against whom an arbitration claim has been initiated obstructs or delays the proceedings by failing to comply with the arbitrator's rules, and thereafter invokes an arbitration agreement after a plaintiff brings an action in federal court.[61] That stands to reason, as "[i]t is not equitable to permit [Defendant] to give Plaintiffs a runaround, then reinvoke the arbitral forum Plaintiffs were seeking in the first place."[62]

---

[58] *Id.* at 2 (emphasis added).

[59] *See* 9 U.S.C. § 2 (stating that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

[60] Pls.' Resp. Opp'n Mot. Dismiss, Ex. C at 6 [Doc. No. 10-3] ("[W]e were . . . denied our right to file a counterstatement."); *id.* at 4 ("When we didn't hear from AAA, we called and they told us the case was dismissed. Thus, we were precluded from filing our counterstatement. You can't file a counterclaim in a nonexistent case."); *id.* at 1 ("Again, speak in judicial terms, you can't file an answer and counterclaim to a complaint in a case that's been dismissed and closed.").

[61] *See, e.g.*, *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41 (1st Cir. 2005); *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005); *Heisman v. Wyndham Vacation Resorts, Inc.*, No. 20-11480, 2021 WL 1138125 (D.N.J. Mar. 22, 2021).

[62] *Heisman*, 2021 WL 1138125 at *3.

This is not such a case. The Allere Group offers no reasonable explanation whatsoever for why it could not itself have filed a demand for arbitration with the AAA instead of filing this case. The Allere Group has asserted affirmative claims in this lawsuit, and therefore logic dictates that it could have asserted these claims before the AAA regardless of whether Lehrer filed first. Even if Lehrer was responsible for delaying the arbitration of his claims against Comer, Bolt, and the Allere Group, it strains credulity to suggest that he was somehow responsible for the Allere Group's failure to pursue its claims against him.[63]

In their back-and-forth communications, counsel for the Allere Group conveyed to Lehrer's counsel that "[t]he concept of the agreement was that your client would file if he wanted and then we would file a counterstatement in arbitration."[64] That is not what the Binding Arbitration Agreement says. Nothing in the text of the agreement suggests that only one party was required to file, and the other party could only file in response. Rather, the agreement states that "*each party* understands that it will not be able to bring a lawsuit concerning *any dispute . . .* covered by the arbitration agreement," and that arbitration was mandatory and binding for all claims, brought by "[*a*]*ny Party* electing to file and serve a statement of claim," which necessarily includes the Allere Group.[65]

---

[63] *See Bush v. Comcast Cable Commc'ns Mgmt., LLC*, No. 19-1004, 2020 WL 4199077 (W.D. Pa. July 22, 2020) (concluding that defendant employer did not materially breach an arbitration agreement with plaintiff employee because plaintiff never demanded to arbitrate her claims).

[64] Pls.' Resp. Opp'n Mot. Dismiss, Ex. C at 1 [Doc. No. 10-3].

[65] Pls.' Resp. Opp'n Mot. Dismiss, Ex. A at 1–2 [Doc. No. 10-1] (emphasis added). The Allere Group cites Paragraph 4 of the Binding Arbitration Agreement, which states that "[a]ny Party electing to file and serve a statement of claim shall do so on or before April 4, 2022," and "[a]ll answering statements shall be filed or served on or before April 18, 2022." Pls.' Resp. Opp'n Mot. Dismiss, Ex. A at 2 ¶ 4 [Doc. No. 10-1]. But as TGVZG correctly raises, it was counsel for the Allere Group who communicated to Lehrer's counsel on April 11, 2022 "that the dates/deadlines in the attached arbitration agreement are flexible and intended to be loose." Pls.' Resp. Opp'n Mot. Dismiss, Ex. C at 8 [Doc. No. 10-3]. Counsel for the Allere Group cannot invoke the "loose" deadlines it earlier disclaimed as a present basis for invalidating the entirety of the agreement—particularly when it suggests that "Lehrer could have filed an arbitration sometime after June 3, 2022," or even that "Lehrer could have refiled his

The Court recognizes that Lehrer's failure to fill out the required form and pay the initial filing fee led to delays, but those delays did not prevent the Allere Group from filing its own demand with the AAA.[66] Eckard knew on April 27, 2022, that the AAA had closed Lehrer's claim, and although the parties continued to discuss Lehrer refiling his claim, nothing prevented Plaintiffs from filing with the AAA instead of in this Court, as the Binding Arbitration Agreement required.

To the extent that the Allere Group suggests its claims could only be brought as counterclaims to Lehrer's allegations, that argument is foreclosed by the existence of this lawsuit, and further by the fact that Plaintiffs have never raised these allegations about the purportedly fraudulent loan documents as counterclaims in prior proceedings. Rather, over eight months after Lehrer filed his first lawsuit against Comer and Bolt in this District,[67] the Allere Group and Bolt filed *a separate lawsuit* against TGVZG in the District of Delaware, raising essentially the same claims asserted here.[68] The District of Delaware lawsuit, filed on June 17, 2021, accused TGVZG, as here, of executing fraudulent loan documents and recording "a false

---

Demand *at any time*," which also would have violated the deadlines in the agreement. Pls.' Resp. Opp'n Mot. Dismiss at 8 [Doc. No. 10] (emphasis added).

[66] The Allere Group cites Rule 5(a) of the AAA Commercial Arbitration Rules and Mediation Procedures, which requires answering statements to be filed "within 14 calendar days after notice of the filing of the Demand is sent by the AAA." It contends that it was unable to file its counterstatement because it never received notice of Lehrer's Demand from the AAA. Again, the Allere Group does not provide any reasonable justification for why it was unable to initiate a new claim itself.

[67] Judge Pappert initially entered a default judgment against Comer for her failure to appear. Default Entry, Nov. 30, 2020, *Lehrer*, No. 20-5228. The default was set aside upon her notice of appearance on December 4, 2020. Notice of Appearance [Doc. No. 7], No. 20-5228. On December 7, 2020, Comer filed an answer to the complaint, and on January 8, 2021, Comer filed an amended answer, neither of which asserted counterclaims related to the UCC-1 or the allegedly fraudulent loan documents at issue here. [Doc. Nos. 8, 24], No. 20-5228.

[68] The Allere Group and Bolt filed their complaint against TGVZG in the District of Delaware on June 17, 2021, before the proceedings before Judge Pappert were referred to Magistrate Judge Elizabeth Hey for settlement discussions. Compl. [Doc. No. 1], *Allere Grp. Prof. Corp. v. TGVZG, LLC*, No. 21-863 (D. Del.).

UCC-1 against The Allere Group[.]"[69] On December 13, 2021, after the Allere Group failed to respond to TGVZG's motion to dismiss, the district court dismissed the case.[70] Comer, Bolt, and Lehrer were undoubtedly aware of the District of Delaware case when they signed the Binding Arbitration Agreement on March 4, 2022, and must have understood that those claims fell within the scope of the agreement, as evidenced by the agreement's explicit references to "a number of lawsuits" and, in particular, "claims arising under the Uniform Commercial Code[.]"[71]

### D.  The Motion is Granted

The Court applies the summary judgment standard pursuant to the Third Circuit's framework in *Guidotti*.[72] The Allere Group correctly states that when the summary judgment standard applies, the non-movant is typically entitled to limited discovery. That component of the *Guidotti* standard applies neatly in the vast majority of disputes concerning arbitrability, given that the application of the summary judgment standard is usually accompanied by genuine factual disputes concerning the existence and enforceability of the arbitration agreement being invoked. In the ordinary context, therefore, limited discovery is logically necessary and helpful to resolve those genuine factual disputes. The established standard is also consistent with the practical reality that enforceable (*i.e.*, indisputable) arbitration agreements or clauses are often incorporated into the documents giving rise to the cause of action—for example, as a clause within a binding employment agreement or business deal.[73]

---

[69] *Id.* at 1.

[70] Order, Dec. 13, 2021 [Doc. No. 6], No. 21-863 (D. Del.).

[71] Pls.' Resp. Opp'n Mot. Dismiss, Ex. A at 1 [Doc. No. 10-1].

[72] 716 F.3d 764; *see also Silfee*, 696 F. App'x at 578 ("[T]he standards laid out in *Guidotti* are truly dichotomous.").

[73] *See, e.g.*, *id.* The complaint in *Silfee* did not attach the terms and conditions containing the arbitration agreement. Those terms and conditions were made available to the district court only as an attachment to the defendant's answer, styled as a motion to dismiss or, in the alternative, to compel arbitration. The Third Circuit held that the Rule 12(b)(6) standard applied because "a concededly authentic arbitration agreement" had been "attached to the

However, in this case, all of the relevant evidence is already before the Court. Limited discovery would serve no practical purpose due to the absence of a genuine dispute regarding the existence and enforceability of the agreement.

The Court's review of the record and the litigation history shows that the parties have engaged in tactics that suggest bad faith. Comer, Bolt, CEI, the Allere Group, Lehrer, Lehrer's family members, and TGVZG have created a legal morass across at least four jurisdictions, in both federal and state courts, all amid CEI's federal bankruptcy proceedings. That said, and to be clear, the Court need not find bad faith to hold that further discovery is not warranted in this case. The Allere Group does not identify any documents or information capable of being discovered that would further support its arguments. It does not contest that its officers, Bolt and Comer, willingly signed and executed the agreement with Lehrer; therefore, there is no discovery this Court could order that would help clarify whether the parties assented to the agreement at the time it was signed.[74] The Allere Group does not contend that Bolt and Comer never received copies of the agreement or were somehow unaware of the agreement's existence, notwithstanding their signatures; therefore, there is no discovery this Court could order directed at the question of whether copies of the agreement were furnished to Bolt, Comer, and Lehrer.[75]

---

complaint"—but only because, as defendant noted in its motion to dismiss, the complaint's allegations that the defendant's debit card system imposed fees in violation of Pennsylvania law necessarily relied upon the terms and conditions governing the debit card system, which contained the arbitration provision. *Id.*

[74] *Cf. Roman*, 2023 WL 3194464 at *3 (affirming district court's decision to order further discovery because plaintiff employees' declarations stated they were "never presented with a screen containing the [arbitration] agreement, that they never clicked on an icon to sign the agreement, and that they were never provided a copy of the agreement").

[75] *Cf. Guidotti*, 716 F.3d at 777 (finding discovery appropriate where plaintiff signed an acknowledgement of an arbitration agreement, but claimed that the agreement was never given to her and that she was unaware of its existence until it was mailed to her three weeks later).

17

At bottom, the Allere Group, the party opposing arbitration, has not suggested the existence of facts that place the enforceability of the Binding Arbitration Agreement in issue. Instead, the Allere Group has submitted a sworn declaration from its counsel, Mark Eckard, and other documentation (including email communications) to support its argument that Lehrer waived the Binding Arbitration Agreement by failing to satisfy the AAA's filing requirements.[76] The sequence of events is not disputed. No further development of the record is needed for the Court to rule on the legal question.

The text of the Binding Arbitration Agreement is unambiguous. By its plain language, the agreement applies to the present dispute. The nature and circumstances of Lehrer's failure to satisfy the AAA's filing requirements are well documented, and the Allere Group has presented ample evidence on that point. But as discussed above, Lehrer's missteps are irrelevant to the Allere Group's ability (and failure) to pursue its own claims with the AAA. The agreement is, by all indications, authentic and binding on the parties.

The Court finds that there is no genuine dispute here as to any material fact.[77] There is no reason to believe that further discovery would reveal facts that might affect the outcome of the

---

[76] *See* Pls.' Sur-Reply Opp'n Mot. Dismiss, Eckard Decl. [Doc. No. 17-1].

[77] The Court issues its decision without a hearing, given that all necessary facts have already been established in the record. No party has requested a jury.

suit. To the contrary, the existing record makes clear as a matter of law that this dispute must be

settled in arbitration.[78] Therefore, the Court will grant TGZVG's motion and close the case.[79]

### IV.  CONCLUSION

For the reasons stated above, the Court holds that Plaintiffs the Allere Group and Barry P.

Bolt, Jr.'s claims against Defendant TGVZG, LLC are subject to an enforceable arbitration

agreement. TGVZG's motion will be granted. An order follows.

---

[78] The Allere Group protests that, if "past behavior" holds true, "Defendant would allow the arbitration to lie dormant, thus requiring Plaintiffs to spend money on attorneys' fees to move the case to disposition." Pls.' Resp. Opp'n Mot. Dismiss at 12 [Doc. No. 10].

Even in the hypothetical scenario where the Allere Group initiates AAA proceedings against Lehrer, and he then continues to avoid paying fees or otherwise engages in stall tactics, the Allere Group presumably would have statutory authorization under the FAA to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see also Lawson v. City of Philadelphia*, No. 18-1912, 2019 WL 934976, at *1 (E.D. Pa. Feb. 25, 2019).

[79] The Court, in its discretion, deems it unnecessary to stay the proceedings pending arbitration. "The FAA directs that if a case referable to arbitration is brought in federal court, the court before which the lawsuit is pending 'shall *on application of one of the parties* stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'" *Schwartz v. Ritz-Carlton Hotel Co., LLC*, No. 17-3751, 2018 WL 3661447, at *4 (E.D. Pa. Aug. 2, 2018) (emphasis added) (quoting 9 U.S.C. § 3). Although section 3 of the FAA "affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration," *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004), no party has requested a stay of the proceedings here.